Eddie J. WILBORN, individually and on behalf of all others similarly situated, Plaintiff,

v.

DUN & BRADSTREET CORPORATION, doing business as Dun & Bradstreet Receivable Management Services, Defendant.

No. 97 C 8990.

United States District Court, N.D. Illinois. Eastern Division.

Aug. 5, 1998.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Sheila A. O'Laughlin, Edelman & Combs, Chicago, IL, for plaintiff.

James A. Cherney, Timothy Bunker Hardwicke, Latham & Watkins, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Eddie J. Wilborn has filed a two-count amended class action complaint against defendant Dun & Bradstreet Corporation, doing business as Dun & Bradstreet Receivable Management Services, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Plaintiff has moved for class certification. For the reasons set forth below, plaintiff's motion is granted.

### FACTS

■ When evaluating a motion for class certification, the court accepts the allegations made in support of certification as true, and does not examine the merits of the case. *See Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993). According to the amended complaint, plaintiff is a resident of Illinois. Defendant is a Delaware corporation and a "debt collector" under the FDCPA. Plaintiff obtained insurance for personal, family, or household purposes from Economy Fire & Casualty Company ("Economy"). Shortly after May 8, 1997, plaintiff received a letter from defendant demanding payment of an insurance premium to Economy. Plaintiff claims that the letter is a form collection notice used by defendant. The letter, a copy of which was attached to the amended com-

plaint as Exhibit A, states that "this communication is being sent to you as a final attempt to amicably resolve [your] past-due account ... unless your check is received within five days, steps will be taken to enforce payment of this obiligation [sic]." Plaintiff asserts no action to enforce payment of the obligation was taken within five days, or at any time prior to October 21, 1997, when plaintiff filed for bankruptcy. Plaintiff asserts that defendant regularly used the form of notice represented by Exhibit A. He also asserts that defendant regularly failed to take action to enforce payment if payment was not received within five days after sending notices in the form of Exhibit A. Therefore, in Count II, plaintiff claims that defendant has violated the FDCPA by sending the form collection letter to consumers because the letter contains false and misleading threats.

The back of the letter contains a notice of the debtor's right to dispute and obtain verification of the debt. Plaintiff asserts that the notice language on the back of the letter is the same language used by defendant on other collection letters. Plaintiff also asserts that Exhibit A, or another letter with identical language on the back, was the first letter he received from defendant concerning the debt to Economy. Defendant has modified the notice language required by the FDCPA by adding the following language at the beginning of the notice:

IMMEDIATE PAYMENT IS REQUESTED. HOWEVER, IF THE AMOUNT CLAIMED AS OWING ON THE OTHER SIDE OF THIS LETTER ARISES FROM A **PERSONAL, FAMILY, HOUSEHOLD OR AGRICULTURAL** TRANSACTION OR OTHERWISE INVOLVES A **CONSUMER TRANSACTION**, PLEASE NOTE THE FOLLOWING . . . .

The notice language required by the FDCPA then follows:

IF THIS IS THE FIRST NOTICE YOU HAVE RECEIVED FROM THIS OFFICE IN REGARDS TO THIS DEBT, THEN:

IF YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, NOTIFY THIS OFFICE WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE. IF YOU DO NOT NOTIFY THIS OFFICE WITHIN THIRTY DAYS THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.

IF YOU REQUIRE VERIFICATION OF THIS DEBT, NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY DAYS FROM RECEIVING THIS NOTICE. THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH VERIFICATION OR JUDGMENT; AND

IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS LETTER IS AN ATTEMPT TO COLLECT THIS DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

In Count I, plaintiff claims that defendant has violated the FDCPA because the request for immediate payment and other language added by defendant is confusing, and overshadows and contradicts the notice language required by the FDCPA.

Plaintiff asserts this class action on behalf of two proposed classes: Class A and Class B.

Class A is defined as:

(a) All natural persons, (b) [w]ith addresses in the State of Illinois, (c) [t]o whom [defendant] sent initial letters, (d) [w]ith a reverse side in the form represented by *Exhibit A*, (e) [o]n or after December 31, 1996, (f) [s]eeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) [w]hich letters were not returned by the Postal Service as undeliverable.

Class B is defined as:

> (a) All natural persons, (b) [w]ith addresses in the State of Illinois, (c) [t]o whom [defendant] sent letters, (d) [i]n the form represented by *Exhibit A,* (e) [o]n or after December 31, 1996, (f) [s]eeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) [w]hich letters were not returned by the Postal Service as undeliverable, and (h) [a]gainst whom legal action was not taken within 30 days after the date of the letter.

The claim in Count I is asserted on behalf of Class A, and the claim in Count II is asserted on behalf of Class B.

### DISCUSSION

■■■■ Fed.R.Civ.P. 23, which governs class actions, requires a two-step analysis to determine whether class certification is appropriate. First, plaintiff must satisfy all four requirements ·of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). Second, plaintiff must satisfy one of the conditions of Rule 23(b). *See Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Plaintiff seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The failure to meet any one of the requirements of Rule 23 precludes certification of a class. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Plaintiff bears the burden of showing that the requirements for class certification have been met. *See Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993). Plaintiff must also establish that he has standing to bring this suit by showing that he is a member of each class that he purports to represent. *See East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

The parties do not dispute that plaintiff has satisfied the numerosity requirement of Rule 23(a). Although it claims that it cannot identify the specific debtors who fall within the each of the classes, defendant states that "its best information is that Class A has approximately 23,000 members and Class B has up to 1,335 members." The parties also do not dispute that this case presents common issues of law and fact. Plaintiff claims that defendant sent him and each of the class members a form collection letter which violates the FDCPA. Thus, the factual basis for each class member's claim is the same. Common legal issues include: (1) whether the form letter contains false and misleading threats, and (2) whether the request for immediate payment and other language added by defendant is confusing, and overshadows and contradicts the notice language required by the FDCPA.

Defendant, however, asserts that plaintiff has failed to satisfy the other requirements for class certification. Defendant argues that the proposed classes should not be certified because: (1) plaintiff's claims are not typical of the class members' claims; (2) plaintiff is not an adequate class representative; (3) the common issues of law or fact do not predominate over the questions affecting only individual members of the class; and (4) a class action is not superior to other available methods for resolving this dispute. Defendant also argues that plaintiff lacks standing to bring this suit.

### I. STANDING

■■■ Plaintiff filed bankruptcy on October 21, 1997. Illinois has a "wildcard" exemption which allows a debtor to prevent the distribution of certain personal property, not exceeding $2,000 in value, by claiming it as exempt from the bankruptcy estate. *See* 735 ILCS § 5/12–1001(b). As of November 1997, plaintiff had already claimed as exempt $1,658 worth of property, and had $342 of the $2,000 limit remaining. On November 24, 1997, plaintiff filed an amended schedule and claimed this FDCPA claim and two others as exempt property.[1] In the amended schedule,

---

1. Plaintiff asserts that one of the other two

claims was never filed, and that the other was

plaintiff stated that the maximum possible recovery under the FDCPA is $1,000 per case, and listed the current market value of his claims as "unknown."

Defendant argues that plaintiff lacks standing because he did not properly exempt his FDCPA claims against defendant. According to defendant, plaintiff's description of the current market value of his claim as "unknown" lacked the required specificity. Defendant also argues that plaintiff lacks standing because his bankruptcy proceedings are still pending.[2]

No objections were filed within thirty days of plaintiff's claim that this cause of action was exempt. The exemption, therefore, became effective and conclusive. *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 642–44, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (holding that, even where a debtor has no colorable basis for claiming an exemption, once the thirty-day period for filing objections provided by Federal Rule Bankruptcy Procedure 4003(b) has expired, the property is considered exempt); *Matter of Kazi,* 985 F.2d 318, 320–22 (7th Cir.1993) (same). Because it is exempt from the bankruptcy estate, this cause of action against defendant belongs to plaintiff, not the bankruptcy trustee. *See Ball v. Nationscredit Fin. Serv. Corp.,* 207 B.R. 869, 872 (N.D.Ill.1997) ("If a cause of action that preexisted the filing of the bankruptcy petition is exempted from the estate or abandoned by the trustee, then it is property of the debtor and the debtor will have standing to pursue the cause of action in his or her own name"). The fact that plaintiff's cause of action is not part of the bankruptcy estate also means that the issue of whether his bankruptcy proceedings are still pending is irrelevant. Accordingly, the court rejects defendant's argument that plaintiff lacks standing.

## II. TYPICALITY OF PLAINTIFF'S CLAIMS

Defendant argues that plaintiff's claims are not typical of the class members' claims for several reasons. First, defendant argues that plaintiff's claim in Count I is not typical of Class A because the factual circumstances surrounding his debt and the debts of other class members differ. Defendant asserts that plaintiff owed $132 for personal automobile insurance, while the accounts of some other class members involved more "sophisticated" transactions like moving expenses and boat insurance.

■ Defendant's first argument is without merit. The claims asserted by plaintiff on behalf of himself and the class members are based on the nature of the collection letter, not the nature of the underlying debt. Defendant does not deny that the collection letter at issue was a form letter. In addition, Jack Finley ("Finley"), defendant's National Account Manager, has testified that the form letter at issue was typically sent to debtors who did not respond to previous letters. Plaintiff asserts that language in this form letter was false and misleading. In this circuit, the objective viewpoint of the reasonable, "unsophisticated consumer" is used to determine whether collection messages are deceptive or misleading, and therefore violate the FDCPA. *See Avila v. Rubin,* 84 F.3d 222, 226–27 (7th Cir.1996); *Gammon v. GC Serv. Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). Thus, the court need not determine whether an individual who purchases boat insurance is more "sophisticated" than an individual who purchases car insurance. *See Blum v. Fisher & Fisher,* 1997 WL 433630, at *1 (N.D.Ill. July 29, 1997) ("The standard, applicable as a matter of law to all debtors, is that of an unsophisticated consumer. The courts do not engage, after a liability finding, in an individual assessment of the level of class member sophistication").

In his concurrence in *Gammon v. GC Serv. Ltd. Partnership,* 27 F.3d 1254, 1259 (7th Cir.1994), Judge Easterbrook made the following observations about the unsophisticated consumer standard:

filed, but was voluntarily dismissed.

**2.** Defendant's assertion that plaintiff's bankruptcy proceedings are still pending is based on plaintiff's testimony that his "bankruptcy never

finished" and is still open. Plaintiff has neither confirmed nor denied this assertion by defendant.

Although the majority describes the unsophisticated person "whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading" as "hypothetical," I understand this reference point to be hypothetical in the same sense as the reasonable person of tort law is hypothetical. Courts seek a benchmark divorced from any one person, but reflecting the behavior of classes of persons acting reasonably. And this reasonable person must differ according to the nature of the addressees. A warning about a drug's side effects, perfectly adequate for the reasonable physician, may be woefully deficient for the reasonable consumer. Thus it is potentially important that the recipients of GC Services' letter were American Express cardholders, a group that is less apt to be misled than, say, an association of high school dropouts.

(internal citation omitted).

■ In *Vaughn v. CSC Credit Serv., Inc.,* 1995 WL 51402, at *4–5 (N.D.Ill. Feb. 3, 1995), and *Holloway v. Pekay,* 1995 WL 736925, at *2 (N.D.Ill. Dec. 11, 1995), Judge Coar, relying on Judge Easterbrook's concurrence, limited the classes in two FDCPA suits based on the type of debt involved. These cases offer some support for defendant's argument that plaintiff's claims are not typical of the class members' claims because his underlying debt is not the same type of debt as the underlying debt of every class member. The court, however, respectfully disagrees with the analysis in *Vaughn* and *Holloway.* The unsophisticated consumer standard applies to all debtors as a matter of law. *See Blum,* 1997 WL 433630 at *1. The standard is meant to protect a "hypothetical consumer" who is "uninformed, naive or trusting." *Gammon,* 27 F.3d at 1257. It is, therefore, inappropriate to mandate a narrowed class definition based on speculative assumptions about the sophistication of certain types of individuals.

Judge Easterbrook's assumption that American Express cardholders are more sophisticated than high school dropouts may be less speculative than other assumptions, but it leads to the sort of improper assertions made in this case. In an attempt to prevent plaintiff from representing the proposed class of debtors in this case, or at least to limit the scope of that class, defendant has argued that individuals who purchase boat insurance are more sophisticated than those who purchase car insurance. This ludicrous argument is unsupported and stereotypical, at best. Defendant appears to be suggesting that individuals who purchase more expensive items are more sophisticated. But some wealthy individuals have obtained their fortune by inheritance or other means unrelated to their own ingenuity or sophistication. Moreover, the purchase of a less expensive item may be a demonstration of thrift, which may indicate a higher level of sophistication. Ultimately, determining what the reasonable, but unsophisticated consumer would buy or think or do is a task for the jury, not the court on a motion for class certification. Accordingly, the court rejects defendant's first argument.

Second, defendant argues that plaintiff's claim in Count II is not typical of Class B because plaintiff's account, unlike other class members' accounts, was "rolled over" into another division for further attempts at collection after he failed to respond to three letters from defendant. Thus, defendant claims that "further steps" to enforce the payment of plaintiff's obligation were in fact taken, as defendant stated they would be in the collection letter. Plaintiff's claim, however, is based on the premise that the statement in the collection letter that "steps would be taken" was a threat of legal action or could be reasonably interpreted as such. *See United States v. Nat'l Fin. Serv., Inc.,* 98 F.3d 131, 135 (4th Cir.1996) ("collection notices violate § 1692e(5) if (1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action"). To accept defendant's second argument would be to accept defendant's interpretation of the language in its collection letter, as opposed to plaintiff's. The court cannot accept defendant's interpretation at this time because it must accept the allegations made in support of certification as true and refrain from examining the merits of the case. *See Hardin v. Harshbarger,* 814 F.Supp. 703, 706

(N.D.Ill.1993). Accordingly, the court rejects defendant's second argument.

Third, defendant asserts that the decision whether or not to pursue legal action is an individual, fact-specific determination, such that plaintiff cannot assert on behalf of Class B that defendant threatened, but did not take, legal action. Whether or not to take legal action against a particular debtor, however, is not necessarily an individual, fact-specific determination. On the contrary, a company could have a policy of not taking legal action against debtors who owe less than a certain amount.[3] In the instant case, plaintiff claims that defendant has such a policy, but sends its collection letters threatening legal action anyway. Defendant has presented some evidence that it does not have such a policy, and that it determines whether to recommend legal action on a case-by-case basis after considering various factors, including the amount of the debt. Plaintiff, however, has presented evidence that defendant, as a matter of policy, does not recommend legal action in cases where the debt is less than a certain amount.[4] Weighing this conflicting evidence for its truth at this stage of the proceedings would be inappropriate. *See In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D.Tex.1978) ("Whether the proof ultimately adduced will establish the existence of a national conspiracy among the defendants is not in issue here; it is not the court's function to weigh this evidence for its truth but merely to ascertain whether it is of a type suitable for classwide use"). Accordingly, the court rejects defendant's third argument.

Nevertheless, the class should be limited based on the amount of the underlying debt. The evidence shows that the amounts of the debts reflected in the accounts of the members of Class B range from $5.06 to $2,443. There is also evidence that suggests that defendant would not recommend suit unless the amount of a consumer debt was almost $5,000. Because plaintiff is asserting that defendant, as a matter of policy, does not recommend legal action in cases where the debt is less than a certain amount, the class will be limited to those individuals whose accounts reflected debts of $5,000 or less.

■ A plaintiff's claim is typical if it arises from the event or practice or course of conduct that gives rise to the claims of other class members, and his claims are based on the same legal theory. *See De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). Here plaintiff's claim arises from his receipt of an allegedly false and misleading form collection letter. The proposed classes consist of people who also received this form collection letter. Plaintiff claims that, in sending the letter, defendant violated the FDCPA with respect to him and the members of Class A and Class B in the same way. Therefore, the court finds that plaintiff has satisfied the typicality requirement of Rule 23.

## III. PLAINTIFF'S ADEQUACY AS THE CLASS REPRESENTATIVE

■ Under Rule 23, the class representative must "fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317 (N.D.Ill.1995) (citations and internal quotations omitted). Defendant argues that

---

3. Finley has testified in his affidavit that the amounts of the debts reflected in the accounts of the members of Class B range from $5.06 to $2,443.

4. For example, Tina Rudins testified that defendant would recommend that a lawsuit be filed with respect to a consumer or commercial debt "[i]f we have been in contact with the debtor, *the balance is over $1,000*, we have knowledge of where the debtor is located and would be able to get service on him or their company, and if we have knowledge of any assets" (emphasis added). Finley testified that, in order for defendant to recommend a lawsuit, a consumer debt would have to be "[a] very minimum of probably $2,000 and more likely higher than that. Probably closer to $5,000."

plaintiff cannot adequately represent the class for several reasons. The court, however, disagrees.

■ First, defendant argues that plaintiff cannot adequately represent the class because he does not have an economic stake in the outcome of this litigation since the debt that was the subject of defendant's collection efforts has been discharged in bankruptcy.[5] But plaintiff's claims are not based on the debt which he allegedly owed; they are based on his receipt of an allegedly illegal collection letter from defendant. Plaintiff has an economic stake in the outcome of this litigation because he is seeking statutory damages, which may be recovered without regard to actual damages. *See Keele v. Wexler*, 149 F.3d 589, 593–94 (7th Cir.1998) (holding that, so long as the named plaintiff and the class members' injuries arose out of the same violative conduct, the named plaintiff could properly represent proposed classes, whether or not she suffered any actual damages, because statutory damages are available under the FDCPA without proof of actual damages).

Second, defendant argues that plaintiff cannot adequately represent the class because he is not sufficiently familiar with his claims and has a "fundamental" misunderstanding of the role of a debt collector. Defendant bases this argument on plaintiff's testimony that defendant was not supposed to demand payment within five days because "[i]t takes three or four days for the letter to get to you," and plaintiff's testimony that defendant did not have a right to take legal action against him because he did not owe defendant any money. Plaintiff, however, has testified that a collection agent is "[w]hen you owe a person and that you don't pay them, they turn it over to a collection agency." He has also testified that he did not contact defendant because he did not feel he owed Economy any money. Plaintiff has thus demonstrated that he understands the role of a collection agency and the relationship between defendant and Economy.

■ Plaintiff has also testified that defendant threatened to bring a lawsuit against him in the collection letter. This alleged threat is the basis for plaintiff's claim in Count II. With respect to Count I, plaintiff's testimony demonstrates that he was, and perhaps still is, confused about the significance of defendant's simultaneous demand for payment within five days and statement that plaintiff could dispute the debt and request verification within thirty days. This confusion, however, is the whole point: plaintiff claims in Count I that the notice language used by defendant was confusing and overshadowed the notice language required by the FDCPA. Plaintiff need only have a marginal familiarity with the facts of his case, and does not need to understand the legal theories upon which his case is based to a greater extent. *See Kamen v. Kemper Fin. Serv., Inc.*, 908 F.2d 1338, 1349 (7th Cir.1990) (finding that a securities class action in which the named representative knew little about either the case or the mutual fund involved, and had given counsel free reign merely fit the norm; it did not demonstrate the named plaintiff's inadequacy as a representative), *rev'd on other grounds*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981) (recognizing that class certification was not defeated in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), even though "the named plaintiff [a Polish immigrant] did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants" and relied almost entirely on the explanations of her son-in-law).

Third, defendant argues that plaintiff cannot adequately represent the class because his perception that defendant threatened legal action against him is based on an unreasonable interpretation of the notice language used by defendant. As stated above, a collection notice violates the FDCPA if a debtor

---

5. It would be more appropriate for defendant to argue that plaintiff's debt *may* have been discharged since the status of plaintiff's bankruptcy proceedings is not known or, at least, has not been disclosed to the court.

would reasonably believe that the notice threatens legal action and the debt collector does not intend to take legal action. *See United States v. Nat'l Fin. Serv., Inc.*, 98 F.3d 131, 135 (4th Cir.1996). Defendant's argument that plaintiff's interpretation of its collection letter was unreasonable, therefore, goes to the merits, and it would be inappropriate for the court to address it at this time. In any event, it is not plaintiff's perspective, but the objective perspective of the reasonable unsophisticated consumer, that is relevant to defendant's liability. *See Avila v. Rubin*, 84 F.3d 222, 226–27 (7th Cir.1996); *Gammon v. GC Serv. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994); *Blum v. Fisher & Fisher*, 1997 WL 433630, at *1 (N.D.Ill. July 29, 1997).

Finally, defendant argues that plaintiff cannot adequately represent the class because he testified at his deposition that he read and understood the entire collection notice when he first received it from defendant. Defendant asserts that plaintiff, by testifying that he understood the notice language, expressly disavowed the theory of liability on which the claim in Count I is based, namely that the notice language on the back of defendant's collection letter was confusing and overshadowed the notice language required by the FDCPA. Although plaintiff has testified that he understood the letter, the cited testimony does not reveal that his understanding was, in fact, correct; it merely establishes that plaintiff, in his own estimation, believes that he understood the letter. In fact, as stated above, plaintiff's testimony demonstrates some confusion on his part about the notice language. In any event, as the court has just stated, whether the language used by defendant was misleading will be judged from the objective viewpoint of the hypothetical unsophisticated consumer. Accordingly, the fact that plaintiff may have understood the notice language used by defendant is irrelevant to defendant's liability and plaintiff's ability to adequately represent the class. The court, therefore, finds that plaintiff has established that he is an adequate class representative.

## IV. PREDOMINANCE OF COMMON ISSUES OF LAW OR FACT

Under Rule 23(b)(3), the questions of law or fact common to the class members must "predominate over any questions affecting only individual members ...." Defendant asserts that the individual issues predominate over the common issues of law and fact in this case for several reasons. First, defendant asserts that some class members may have filed bankruptcy and failed to properly exempt their claims against defendant such that they would lack standing to sue. Defendant argues that because the court will have to conduct an inquiry as to each class member's standing, individual issues predominate.

Although some class members may not be entitled to personally recover damages because their claims have become part of a bankruptcy estate, the common issues of law and fact regarding defendant's liability still predominate. If damages are awarded, the bankruptcy status of each class member will have to be determined. This determination regarding damages, however, need not require a highly fact-intensive inquiry, as defendant suggests. Many if not most class members will not have filed bankruptcy. As for those class members who have, determining whether they have exempted their claims against defendant should be a relatively straightforward matter. The bankruptcy issue, therefore, does not preclude certification. *See Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D.Ill. 1989) (certifying class even though each class member would have to show that the defendant's RICO violation caused injury to his or her property); *Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147, 151 (N.D.Ill.1982) (finding in a securities fraud case that, "[i]f necessary, the Court may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact").

The FDCPA is meant to protect individuals who are the subject of improper collection efforts, and such individuals may be more likely to file for bankruptcy than individuals who have not been the subject of collection efforts. If the mere assertion that some

class members may have filed bankruptcy and failed to properly exempt their claims was enough to defeat class certification, it is doubtful that any class involving the sort of individuals that the FDCPA was meant to protect could be certified. Accordingly, the court rejects defendant's first argument.

■ Second, defendant argues that individual issues predominate because only non-business debts are subject to the requirements of the FDCPA, and it is not clear whether each class member's debt was business-related. Plaintiff has limited the proposed classes to only those individuals who were sent letters "[s]eeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts." Defendant, however, argues that an "in-depth" inquiry as to the nature of each class member's debt will be required because—contrary to plaintiff's assertions—it cannot determine by looking at its own records which debts, if any, are business-related.

The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class actions. If that need alone precluded certification, there would be no class actions under the FDCPA. The court acknowledges that defendant has cited two cases in which the court found that the need to determine whether the transactions at issue were consumer transactions precluded class certification. *See Parker v. George Thompson Ford, Inc.,* 83 F.R.D. 378, 381 (N.D.Ga.1979); *Berkman v. Sinclair Oil Corp.,* 59 F.R.D. 602, 609 (N.D.Ill.1973). Yet, other courts, including the Seventh Circuit, have reached contrary conclusions. *See Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 n. 4 (7th Cir.1974) (observing that the possibility that some transactions were commercial rather than personal would probably not prevent certification in a Truth in Lending Act class action because commercial transactions are "frequently ... readily identified by the listing of the name of the business as the purchaser"); *Beasley v. Blatt,* 1994 WL 362185, at *5 (N.D.Ill. July 11, 1994) (finding that a common issue predominated over individual issues because determining whether

the class members entered into their automobile leases for business or personal reasons would be "easy"); *Bantolina v. Aloha Motors,* 419 F.Supp. 1116, 1122 (D.Haw.1976) ("while there may be some difficulties in determining whether some class members are barred from claiming relief under the Truth in Lending Act because of the commercial nature of the transaction ... this Court does not believe that such a potential complexity is overly serious or overshadows the advantages the class-action device provides in this case").

In this case, the process of determining whether the debts at issue are consumer debts should be relatively straightforward. Although defendant claims that it cannot determine the nature of the debts from its own records, the evidence suggests that the necessary information can be obtained from defendant's customers. Moreover, the court is reluctant to deny certification on the grounds that the nature of the debts cannot be determined when the testimony of several of defendant's agents demonstrates that defendant itself assumes certain debts are consumer debts when the debtor's name is an individual's name. The court, therefore, rejects defendant's second argument.

Third, defendant asserts that individual issues predominate because the court will have to determine what "steps," if any, were taken with respect to each class member after he or she received the collection letter. Defendant argues that it cannot be liable for threatening to take "steps" if steps, such as sending additional letters or calling the debtor on the telephone, were actually taken. This argument, however, is based on defendant's assertion that its threat to take "steps ... to enforce payment" refers to any additional collection efforts, as opposed to legal action, as plaintiff claims. As stated above, the court must accept the allegations made in support of certification as true and refrain from examining the merits of the case. *See Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993). Therefore, it is inappropriate, at this time, to either accept defendant's interpretation of the notice language or address whether the interpretation offered by plaintiff is reasonable. Accordingly, the

court rejects defendant's third argument, and finds that the issues of law or fact common to the class members predominate over any individual questions.

## V. SUPERIORITY OF CLASS ACTION AS THE METHOD OF ADJUDICATION

■ Rule 23(b)(3) also requires a finding that a class action is superior to other available methods of adjudication. Defendant argues that a class action is not a superior method in this case because individual issues predominate over the common issues. The court has already found that individual issues do not predominate over the common issues in this case and, therefore, rejects this argument.

Defendant also argues that a class action is not superior because it would result in a de minimis award for each class member. Under the FDCPA, the statutory damages awarded to a class may not exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. *See* 15 U.S.C. § 1692k(a). According to defendant's estimation, Class A has approximately 23,000 members. If Class A were to recover the maximum amount, each class member would each stand to recover approximately $22 ($500,000 divided by 23,000) in statutory damages.[6] Because up to $1000 in statutory damages may be awarded in an individual action, defendant asserts that a class action in this case is actually disadvantageous to the class members.

In making this argument, defendant ignores the fact that class members may recover any actual damages which they have sustained in addition to their share of the statutory damages. Defendant also does not address the inconvenience of pursuing an individual action or an individual action's potential lack of deterrence. *See Sarafin v. Sears, Roebuck and Co., Inc.*, 73 F.R.D. 585, 588 (N.D.Ill.1977) (recognizing that the threat of a class action has a "potent deterrent effect" on creditors, and that "[e]liminating that deterrent for all large classes

would emasculate the enforcement of the [Truth in Lending] Act"). In any event, defendant's alleged concern that individual class members may be able to recover more in individual actions is adequately addressed by use of the Rule 23(b)(3) opt-out procedure. *See Avila v. Van Ru Credit Corp.*, 1995 WL 22866, at *6 (N.D.Ill. Jan. 18, 1995) (finding that possibility that class members might be able to recover more damages by pursuing individual actions did not preclude certification because "the ability of individual plaintiffs to bring individual suits for more damages is preserved by ample notice and use of the Rule 23(b)(3) opt-out procedure"); *Sarafin*, 73 F.R.D. at 588–89 (certifying the class, even though each member stood to recover only a fraction of the amount he might recover as an individual plaintiff, because each class member would receive notice of his right to pursue an individual action against the defendant).

The common issues of law and fact in this case will be more efficiently resolved in a class action. A class action will also allow the individual class members to avoid the costs and hassles of bringing an individual action against defendant. Finally, a successful class action will have a stronger deterrent effect on defendant than would the handful of individual actions that might otherwise be filed. Accordingly, the court finds that a class action is superior to other available methods of adjudication of this controversy.

## VI. STATUTE OF LIMITATIONS

The proposed classes are made up of individuals who were sent letters "[o]n or after December 31, 1996 ...." Defendant asserts that, because plaintiff filed his original complaint on January 5, 1998, the claims of class members who received letters between December 31, 1996, and January 5, 1997, are expired under the one-year statute of limitations. Plaintiff has not responded to this argument. The court's docket, however, reflects that plaintiff filed his original complaint on December 31, 1997, not January 5, 1998. Indeed, the case number, 97 C 8990,

---

**6.** Although defendant does not specifically address Class B in its brief, the court notes that a maximum statutory recovery of $500,000 divided by the roughly 1,335 members of Class B yields a recovery of approximately $375 each in statutory damages.

establishes that the case was filed and docketed in 1997. Accordingly, the court finds that none of the claims of the class members are barred by the statute of limitations.

## CONCLUSION

Because he has met the requirements of Rule 23, plaintiff's motion for class certification is granted. Class A is certified and defined as:

(a) All natural persons, (b) with addresses in the State of Illinois, (c) to whom Dun & Bradstreet sent initial letters, (d) with a reverse side in the form represented by *Exhibit A,* (e) on or after December 31, 1996, (f) seeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) in an amount of $5,000 or less, (h) which letters were not returned by the Postal Service as undeliverable.

Class B is certified and defined as:

(a) All natural persons, (b) with addresses in the State of Illinois, (c) to whom Dun & Bradstreet sent letters, (d) in the form represented by *Exhibit A,* (e) on or after December 31, 1996, (f) seeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) in an amount of $5,000 or less, (h) which letters were not returned by the Postal Service as undeliverable, and (i) against whom legal action was not taken within 30 days after the date of the letter.