Karla Andrea WILKERSON, Plaintiff,

v.

Gerald E. BOWMAN, George W. Heintz, James D. Boscia, Glenn S. Vician, Paul H. Ellison, and Thomas A. Burris, doing business as Bowman, Heintz, Boscia & Vician, a partnership, Defendants.

No. 00 C 5199.

United States District Court, N.D. Illinois, Eastern Division.

March 26, 2001.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Adam M. Berger, Edel-

man, Combs & Latturner, Chicago, IL, for plaintiff.

David Matthew Schultz, Peter E. Pederson, Jr., Hinshaw & Culbertson, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PALLMEYER, District Judge.

Plaintiff Karla Wilkerson received a letter from Indiana attorneys seeking to collect on an unpaid car loan. Plaintiff alleges the letter violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g(a)(1), because it does not state the amount of the debt as of the date of the letter. Plaintiff seeks to represent a class of borrowers who received letters in the same form from these Defendants. Defendants argue that the letter does in fact comply with the FDCPA, or that, if it does not, the *"bona fide* error" defense precludes liability in this case. Class certification is not appropriate in this case, Defendants contend, because Plaintiff has not explained how she will distinguish consumer debts, which are covered by the FDCPA provisions, from business debts, which are not. They argue, further, that Plaintiff's decision to name individual partners, rather than the firm only, as Defendants in this case requires denial of the class certification motion.

As explained below, this court concludes that the form letter involved in this case fails to state the amount of the debt as required by the FDCPA and that the *bona fide* error defense is not available on these facts. The court concludes, further, that questions of law and fact common to the proposed class predominate over individual damages issues, and that class certification is therefore appropriate.

### FACTS

Plaintiff Karla Wilkerson is a resident of Illinois. (Defendants' Local Rule 56.1 Statement of Material Facts and Statement of Additional Facts (hereinafter, "Defs.' 56.1 Stmt.") ¶ 1.) Defendants are partners in the law firm of Bowman, Heintz, Boscia, & Vician ("Bowman, Heintz"), an Illinois partnership of attorneys in Illinois and Indiana. (*Id.*

¶ 2.) On February 25, 2000, Defendants sent Plaintiff a form letter seeking to collect on an installment note she executed to obtain financing from General Motors Acceptance Corporation for the purchase of a 1994 Chevrolet Cavalier. (*Id.* ¶ 2.) The letter states that it is "from a debt collector" and explains Ms. Wilkerson's responsibility to dispute the debt by written notice to Defendants within 30 days. (2/25/00 Letter, Ex. A to Plaintiff's Response to Defendants' Statement of Material Facts and Statement of Additional Facts (hereinafter "Pltf.'s Response").) In the "Re:" line, the February 25, 2000 letter identifies its subject as follows:

Your indebtedness to:

GENERAL MOTORS ACCEPTANCE CORPORATION

Balance: $ 3484.02, less applicable rebate, if any, $ .00 accrued interest and/or late charges, up to $ 350.00 attorney fees, exact amount to be determined by agreement between you and us or by a court, and 20.00% interest per annum from February 4, 2000

(*Id.*) It is undisputed that the letter Plaintiff received is a form letter (Vician Dep., Ex. B to Pltf.'s Response, at 46:3–4) that includes blank spaces for the amount set forth as "balance," the interest and late charges, the attorney fee figure, and the interest rate. The letter refers to attorney fees and a rate of interest, but Defendants explained that, in actual practice, where a debtor responds to such a collection letter before Defendants have filed suit to collect, Defendants will accept payment of the principal owed as settlement in full. (Defs.' 56.1 Stmt. ¶¶ 7, 8, Vician Dep. at 68:22–24, 69:10–12, 18–20; 70:9–11.) No reference to such a practice appears in the text of the letter, however. On the other hand, in the unusual event in which a debtor who receives such a letter contacts the firm and explicitly requests the current total balance due, including interest and late charges, a firm employee could electronically calculate the total amounts associated with the debt and ask the debtor to pay that total. (*Id.* ¶ 11; Vician Dep. at 56:22–57:10.)

## DISCUSSION

### Defendants' Letter Does not Adequately State the Amount of the Debt

■ Plaintiff alleges that the letter she received lacks specifics required by the Fair Debt Collection Practices Act. Section 1692g(a) of that Act provides that, in connection with collection of a debt, a debt collector must provide the consumer with a written notice containing certain information, including "the amount of the debt," the name of the creditor, and directions for the consumer to follow should he or she wish to dispute the debt. Plaintiff Wilkerson argues that the letter she received from Defendants does not adequately state the amount of the debt owed.

As authority for her argument, Wilkerson cites *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.,* 214 F.3d 872 (7th Cir.2000). In that case, the defendant law firm sent plaintiff, a mortgage debtor, a dunning letter stating a figure as the " 'unpaid principal balance' " he owed, but adding that " 'this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property....' " *Id.* at 875. Judge Posner, writing for our Court of Appeals, had little difficulty in concluding that this disclosure does not comply with the requirements of § 1692g(a)(1): "The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt." *Id.* The court pointed out that the fact that the amount owed changes from day to day does not, by itself, excuse the defendants' failure to provide the total amount due, including interest and other charges, as of the date the letter was sent.

Defendants in the case before this court concede that the letter at issue in *Miller* is similar to the one involved here in that "neither provides an exact number for accrued interest and late charges." (Defendants' Memorandum in Support of Cross Motion for Summary Judgment (hereinafter, "Defs.' Memo"), at 7.) *Miller* does not control this case, in Defendants' view, however, because here the Bowman, Heintz firm sought to collect only the principal. According to De-

fendants, there was no need for them to disclose precise figures for applicable rebates, interest, and late charges, because these were not amounts that Defendants actually sought to collect. The absence of precision with respect to attorneys' fees (the notice seeks "up to $350.00 in attorneys' fees") also should not trouble the court, Defendants argue, because they did not in fact intend to collect any attorneys' fees from any debtor who agreed to a settlement prior to suit. (*Id.*)

This court concludes *Miller* is indeed dispositive here. The court is unable, from its own reading of Defendants' letter, to determine the amount of the debt they seek to recover. Defendants testified that they intended only to collect the amount listed as "balance"—for Ms. Wilkerson, $3484.02—but the court is at a loss to understand how or why the debtor was expected to know that although "late charges," "attorney fees," and "20% interest per annum" are listed as part of the "indebtedness," she was not in fact expected to pay those amounts. Perhaps most confusing is the reference to a reduction of the indebtedness by the amount of "applicable rebate, if any." Without citation, Plaintiff explains in her brief that "[t]he 'rebate' refers to credit for unearned finance charges, unearned credit life insurance premiums, unearned credit disability insurance premiums, and unearned extended warranty or service contract charges." (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendants' Cross Motion, at 5.) Assuming that Plaintiff is correct about the definition, it appears that she is also correct that the specifics of whether and to what extent a rebate might be due was information that Defendants could have obtained at the time the letter was printed and mailed. (Vician Dep., Ex. B to Pltf.'s Response, at 61:21–62:15 ("Q. Typically if a rebate would or would not apply, would that be shown somewhere in the debtor file? A. It might."); Bowman Dep., Ex. C to Pltf.'s Response, at 26:9–14 ("Q. Generally, if a rebate applied, would that be noted somewhere in a file? A. I would think that the client would indicate on the transmittal letter or the download

whether or not a rebate applied and whether or not they had made it.").)

Defendants provide no explanation for the failure to be precise about the amount owed. The fact that they did not in fact intend to collect any amounts beyond the balance is unsatisfying. Most importantly, that fact is not disclosed in the letter itself. In any event, as Plaintiff urges, there may be as much harm in overstating a debt as in understating it. (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, at 9.) Faced with a list of potential but uncalculated additional charges, including 20% interest on a figure she cannot calculate, and lacking any information about the degree, if any, to which rebates will reduce her liability, a debtor may well be uncertain whether she should dispute the debt or pay it. The court concludes that the form letter Defendants sent to Plaintiff in this case violates the FDCPA.

**_Bona Fide_ Error Defense**

■ The FDCPA includes a provision for the defense of _bona fide_ error: Under § 1692k(c), a debt collector may not be held liable for an FDCPA violation if the collector shows that the violation was unintentional and that it maintained procedures reasonably adapted to avoid the violation. In support of their argument that the _bona fide_ error defense applies here, Defendants reiterate that they were "not seeking to collect any amounts on a pre-suit basis other than the principal, and the letter gave an exact figure for this amount." (Defs.' Memo, at 8–9.) Because the number set forth in the letter "reflected the full amount sought during the pre-suit collection process," according to Defendants, their alleged violation was "unintentional." (_Id._ at 11.)

In this court's view, Defendants' error in this case cannot fairly be characterized as unintentional. The form letter itself was prepared and reviewed by Defendants, attorneys in a sophisticated debt collection law practice. Attorneys at the firm routinely review each such letter before it is mailed. Although the information set forth in the letter is obtained from Defendants' clients, it is Defendants themselves who make the determination about the specifics to be included

in the letter. If it is not possible for Defendants to be precise about the amount owed by the debtor at the time the letter is sent, they have not explained why this is so. Nor does the statute direct disclosure of "the amount sought" or "the amount to be collected." It requires disclosure of "the amount of the debt."

This case thus differs from a previous case against these same Defendants, in which the _bona fide_ error doctrine shielded them: In _Jenkins v. Heintz_, 124 F.3d 824 (7th Cir. 1997), Defendants attempted to collect premiums for "force placed" insurance not authorized by the debtor's automobile installment contract. Because Defendants did not know the challenged premiums were unauthorized, the Seventh Circuit affirmed a determination that they were entitled to dismissal of claims against them. Similarly, in _Jenkins v. Union Corp._, 999 F.Supp. 1120, 1140 (N.D.Ill.1998), a creditor referred a debt to Transworld Systems for collection and incorrectly indicated on the referral form that the debt was a dishonored check, to which a $25 service fee applied. The check was in fact a stop-payment check, so the creditor was not entitled to the extra fee. Transworld demonstrated that it had taken precautions against this kind of error: it advised its clients in writing to submit only those charges to which they were legally entitled and to add additional charges only after consulting an attorney, and gave its sales staff instructions to convey the same message to prospective clients. The district court concluded that because Transworld had no way of knowing that the service charge was unauthorized at the time it attempted collection, the _bona fide_ error defense applied. Neither of these cases stands for the proposition that a mistaken view of the obligations imposed by FDCPA will support the _bona fide_ error defense. _See Irwin v. Mascott_, 112 F.Supp.2d 937, 960 (N.D.Cal.2000) ("the bona fide error defense applies almost exclusively to clerical errors which somehow manage to slip through procedures designed to catch them.").

In this case, Defendants appear to have a mistaken view of the obligations imposed by the FDCPA. The fact that they intended

only to collect the unpaid balance, and to forgive other indebtedness in return for a pre-suit settlement, does not excuse their failure to disclose the precise amount of Plaintiff's debt as of February 25, 2000. The *bona fide* error defense is not available here.

**Class Certification**

■ Plaintiff has moved to certify a class consisting of:

a. All natural persons with Illinois addresses;

b. Who were mailed a form collection letter from Defendants in the form sent to Plaintiff Wilkerson;

c. On or after a date one year prior to the filing of this case;

d. In connection with attempts to collect on a debt which, according to the nature of the creditor or the debt, or the records of the creditor of defendants, was incurred for personal family or household purposes; and,

e. Which letters were not returned by the Postal Service.

(Plaintiff's Motion for Class Certification at 1–2.)

Plaintiff bears the burden that the requirements for class certification are met. Under Rule 23(a), Plaintiff must demonstrate that the class is so large that joinder is impractical, that questions of law or fact are common to the class, that the class representative's claim is typical, and that she is able to fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998). In addition to these requirements, the proponent of class certification must also satisfy one of the elements of Rule 23(b). Plaintiff here seeks certification under Rule 23(b)(3), which requires a showing that (1) questions of law or fact common to the class predominate over individual questions and (2) the class action is superior to other means of adjudicating the alleged class claims.

Defendants have not challenged Plaintiff's showing with respect to Rule 23(a), and the court concludes those requirements are met here. Defendants' testimony establishes that they sent hundreds of standard form collection letters to Illinois residents each year.

Joinder of the many recipients of the form at issue in this case would be impractical. There are common questions of law and fact: whether the form letter violates the FDCPA, 15 U.S.C. § 1692g. Plaintiff Wilkerson, herself a recipient of the letter at issue, is typical, has retained experienced class counsel, and presents no interests that could potentially conflict with those of other class members.

Defendants do argue that Plaintiff has not met the requirements of Rule 23(b)(3), however. They assert that individual issues will predominate over common issues because only non-business debts are subject to the requirements of the FDCPA, and it is not clear whether each class member's debt was non-business-related. Plaintiff has limited the proposed class to only those individuals who were sent letters seeking to collect debts "which, according to the nature of the creditor or the debt, or the records of the creditor or defendants," are non-business debts. According to Defendants, Plaintiff has not demonstrated that persons with business debts could easily be excluded from the class via a review of records. (Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, at 5.)

A similar argument has been made in several other proposed class actions in this district. As this court's colleagues have noted, the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA. *See, e.g., Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D.Ill.1998); *In re CBC Cos., Collection Letter Litig.*, 181 F.R.D. 380, 385 (N.D.Ill.1998); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D.Ill.1998).

Defendants cite cases from other districts in which courts have concluded that the need to determine whether the transactions at issue were consumer transactions precluded class certification. *See Lewis v. Jesse L. Riddle, P.C.*, 1998 U.S.Dist. LEXIS 20465 (W.D.La.1998); *Neves v. Nationwide Credit, Inc.*, 1996 U.S.Dist. LEXIS 22241 (N.D.Ga. 1996); *Parker v. George Thompson Ford*,

*Inc.,* 83 F.R.D. 378, 381 (N.D.Ga.1979); *Berkman v. Sinclair Oil Corp.,* 59 F.R.D. 602, 609 (N.D.Ill.1973). Other courts, including the Seventh Circuit, have reached contrary conclusions. *See Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 n. 4 (7th Cir.1974) (observing that the possibility that some transactions were commercial rather than personal would probably not prevent certification in a Truth in Lending Act class action because commercial transactions are "frequently . . . readily identified by the listing of the name of the business as the purchaser"); *Wilborn,* 180 F.R.D. at 357 (overruling objection to certification of class of recipients of a form collection letter under the FDCPA where evidence suggests that information concerning whether the debt is a consumer debt could be obtained from defendant's customers); *In re CBC Cos.,* 181 F.R.D. at 385 (rejecting the argument that the need to determine whether the class members' debt was for business or commercial purposes destroys commonality, because class members themselves can be required to prove their debts were for personal purposes); *Sledge,* 182 F.R.D. 255, 258 (same).

The court suspects that in this case the process of determining whether the debts at issue are consumer debts should be relatively straightforward. Notably, Defendants themselves do not argue that they are unable to determine the nature of the debts from their own records; they simply argue that Plaintiff has not demonstrated that this is possible. Indeed, the form of the letter Plaintiff Wilkerson received appears to be one targeted at consumer debtors, as it contains several of the disclosures explicitly required by 1692a. Finally, if there is genuine confusion over this issue, class members can be asked a single question to determine whether they are entitled to relief. *See Wells v. McDonough,* 188 F.R.D. 277, 279 (N.D.Ill.1999) (persons who have business debt can be "weeded out [of FDCPA class] by asking the class members one question.").

Nor is the court moved by Defendants' second objection to class certification: that Plaintiff has not shown that class members will recover more than a *de minimis* amount. (Defendants' Memorandum in Opposition to Plaintiff's Motion for Class Certification, at 5.) To the contrary, the modest recovery available to an individual who proves an FDCPA violation is an argument in favor of class certification, not a basis for denial of the motion. The maximum recovery for an individual who prevails in a case such as this is $1,000. 15 U.S.C. § 1692k. In the court's view, that amount is clearly insufficient to support the expense and risk of federal litigation, even (for many lawyers) where an award of attorneys' fees may be available. The fact that individual lawsuits are unlikely is underscored by the fact that recipients of collection letters are most often individuals in financial difficulty. Indeed, the class action is not only the superior method, but the best one for pursuing remedies under the FDCPA.

Finally, Defendants argue in a supplemental submission that Plaintiff's decision to name the partners of Bowman, Heintz as individual Defendants, by itself, requires that her motion for class certification be denied. (Defendants' Supplemental Response to Plaintiff's Motion for Class Certification, at 1.) According to Defendants, naming the individual lawyers as Defendants is fatal to class certification because the court will be required to certify dozens of subclasses, consisting of persons who received letters from each of the individual Defendants or any combination of individual lawyers who may have worked on a file. Had Plaintiff simply named the law partnership, or stipulated that the partnership net worth will determine the class recovery, the "partnership would constitute the debt collector for all members of the alleged class." *Id.* at 6.

With respect, the court is baffled by this argument. Regardless which of the individual lawyers signed any collection letter, it appears to this court that the partnership is the debt collector. Notably, the letter sent to Plaintiff Wilkerson herself bears an illegible signature over the typed words, "Merrillville Office." The Bowman, Heintz law firm acts through individual lawyers, as does any business association.

As these Defendants are painfully aware, in 1995 the Supreme Court affirmed the decision of our Court of Appeals that a lawyer

who regularly tries to obtain payment of consumer debts through legal proceedings meets the Act's definition of "debt collector." *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Defendants apparently do not dispute that the attorney who sent Ms. Wilkerson the form letter at issue is liable for any FDCPA violation. Plaintiff's decision to name the firm and its partners separately is arguably surplusage. In *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir. 1997), the Seventh Circuit remarked upon

> the fatuity of Bartlett's naming "John A. Heibl" and "John A. Heibl, Attorney at Law," as separate defendants. If Heibl were being sued for conduct within the scope of his agency or employment as a partner or an associate of a law firm, the firm could be named along with him as a defendant, because it would be liable jointly with him for that conduct.

128 F.3d at 499–500. *Cf. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.,* 214 F.3d 872, 876 (7th Cir.2000) ("The liability of a partnership is imputed to the partners, and so the plaintiff was entitled to sue the partners as well as the partnership."). *See also Randle v. GC Services, L.P.,* 25 F.Supp.2d 849, 852 (N.D.Ill.1998) (general partners of a limited partnership engaged in debt collection can themselves be "debt collectors" under the FDCPA and individual partners may be sued as individuals without resort to the partnership name); *Blakemore v. Pekay,* 895 F.Supp. 972, 977 (N.D.Ill.1995) (liability under the FDCPA attaches to individual attorney and law firm where both met Act's definition of "debt collector").

The real dispute here is not whether Plaintiff has acted improperly in naming individual law partners as Defendants. The real dispute—which has been the subject of discovery objections, but has not been briefed—is whether Plaintiff will be entitled to consider the net worth of each partner in determining the statutory damages award, or will be confined to recovery against the net worth of the partnership itself. Whatever the merits of the parties' positions on this issue, this court concludes that it does not preclude certification of a class in this case.

### CONCLUSION

Plaintiff's motion for partial summary judgment (Doc. 3–1) is granted. Defendants' motion for summary judgment (Doc. 21–1) is denied. Plaintiff's motion for class certification (Doc. 3–1) is granted, and the court will certify a class as proposed in Plaintiff's motion of

a. All natural persons with Illinois addresses;

b. Who were mailed a form collection letter from Defendants in the form sent to Plaintiff Wilkerson;

c. On or after a date one year prior to the filing of this case;

d. In connection with attempts to collect on a debt which, according to the nature of the creditor or the debt, or the records of the creditor of defendants, was incurred for personal family or household purposes; and,

e. Which letters were not returned by the Postal Service.

This matter is set for status conference on April 17, 2001, at 9:00 a.m., for the purposes of addressing issues relating to (a) possible settlement; and/or (b) appropriate class notice.