In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3263

Kevin Miller,

Plaintiff-Appellant,

v.

McCalla, Raymer, Padrick, Cobb, Nichols,
and Clark, L.L.C., and Echevarria, McCalla,
Raymer, Barrett, and Frappier,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 5563--Elaine E. Bucklo, Judge.

Argued March 31, 2000--Decided June 5, 2000

 Before Posner, Chief Judge, and Ripple and Rovner,
Circuit Judges.

 Posner, Chief Judge.  This is a suit under the
Fair Debt Collection Practices Act, 15 U.S.C.
sec.sec. 1692 et seq., against two related law
firms engaged in debt collection. The plaintiff
(the debtor) claims that the defendants violated
the Act by failing to state "the amount of the
debt" in the dunning letter of which he
complains. See sec. 1692g(a)(1). They reply that
they did state the amount and that anyway the
letter is outside the scope of the Act because
they were trying to collect a business debt
rather than a consumer debt, and the Act is
limited to the collection of consumer debts. sec.
1692a(5); First Gibraltar Bank, FSB v. Smith, 62
F.3d 133 (5th Cir. 1995). The district court
granted summary judgment for the defendants on
the latter ground, and let us start there.

 The plaintiff bought a house in Atlanta in 1992,
and took out a mortgage. He lived in the house
until 1995, when he accepted a job in Chicago;
from then on, he rented the house. He received
the dunning letter from one of the defendant law
firms on behalf of the mortgagee in 1997. By this
time, renting the property to strangers, the
plaintiff was making a business use of the
property and so the mortgage loan was financing a

business rather than a consumer debt. But the plaintiff argues that the relevant time for determining the nature of the debt is when the debt first arises, not when collection efforts begin. The defendants riposte that since the Act under which the plaintiff is suing, unlike the Truth in Lending Act, governs debt collection, the relevant time is when the attempt at collection is made. Oddly, there are no reported appellate decisions on the issue, though it was assumed in Bloom v. I.C. System, Inc., 972 F.2d 1067, 1068-69 (9th Cir. 1992), that the relevant time is when the loan is made, not when collection is attempted.

 The language of the statute favors this interpretation. "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." sec. 1692a(5). The defendants don't deny that the plaintiff is a "consumer," even though he is in the "business" of renting his house (they can't deny this, because "the term 'consumer' means any natural person obligated or allegedly obligated to pay any debt," sec. 1692a(3)), and the antecedent of the first "which" in the clause "in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes" is, as a matter of grammar anyway, the transaction out of which the obligation to repay arose, not the obligation itself; and that transaction was the purchase of a house for a personal use, namely living in it. Grammar needn't trump sense; the purpose of statutory interpretation is to make sense out of statutes not written by grammarians. But we cannot say that it is senseless to base the debt collector's obligation on the character of the debt when it arose rather than when it is to be collected. The original creditor is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what current use the debtor is making of the loan (in this case, the plaintiff is using the loan, in effect, to generate income from the house that secures the loan).

 Against this the defendants argue that the plaintiff's interpretation creates a loophole. Suppose the plaintiff had bought the house to use as an office, and later converted it to personal use; on the plaintiff's interpretation of the Act the debt collector would not have to give him the statutory warnings. But this makes perfect sense. The Act regulates the debt collection tactics

employed against personal borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods. See S. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). Businessmen don't need the warnings. A businessman who converts a business purchase to personal use does not by virtue of that conversion lose his commercial sophistication and so acquire a need for statutory protection. And we agree with the plaintiff's concession that if a borrower for a personal use were to assign the loan that financed that use to a business, the debt would then arise out of the assignment, rather than out of the original loan, and so the Act would be inapplicable--rightly so since the recipient of the dunning letter would be a businessman, not a consumer.

So the Act is applicable and we move to the question whether the defendants violated the statutory duty to state the amount of the loan. 15 U.S.C. sec. 1692g(a)(1). The dunning letter said that the "unpaid principal balance" of the loan (emphasis added) was $178,844.65, but added that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement. The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures." An 800 number is given.

The statement does not comply with the Act (again we can find no case on the question). The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. The requirement is not satisfied by listing a phone number. It is notorious that trying to get through to an 800 number is often a vexing and protracted undertaking, and anyway, unless the number is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to. It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as

principal--on the date the dunning letter was sent. We think the statute required this.

In a previous case, in an effort to minimize litigation under the debt collection statute, we fashioned a "safe harbor" formula for complying with another provision of the statute. Bartlett v. Heibl, 128 F.3d 497, 501-02 (7th Cir. 1997); see also Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000). We think it useful to do the same thing for the "amount of debt" provision. We hold that the following statement satisfies the debt collector's duty to state the amount of the debt in cases like this where the amount varies from day to day: "As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]." A debt collector who uses this form will not violate the "amount of the debt" provision, provided, of course, that the information he furnishes is accurate and he does not obscure it by adding confusing other information (or misinformation). E.g., Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000); Bartlett v. Heibl, supra, 128 F.3d at 500. Of course we do not hold that a debt collector must use this form of words to avoid violating the statute; but if he does, and (to repeat an essential qualification) does not add other words that confuse the message, he will as a matter of law have discharged his duty to state clearly the amount due. No reasonable person could conclude that the statement that we have drafted does not inform the debtor of the amount due. Cf. Walker v. National Recovery, Inc., 200 F.3d 500, 503 (7th Cir. 1999).

It remains to consider the independent argument of one of the two defendant law firms that it is not a "debt collector" within the meaning of the statute. See sec. 1692a(6). The firm that sent the dunning letter to the plaintiff is McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., and the other firm is Echevarria, McCalla, Raymer, Barrett & Frappier. The first firm, the McCalla firm we'll call it, is a partner in the Echevarria firm. (The purpose of this unusual arrangement, presumably, is to preserve the McCalla firm's limited liability, but the parties do not discuss the purpose and it is not material.) The Echevarria firm argues that it should not be liable for its partner's statutory violation, analogizing its relation to its

partner as one of affiliated corporations and pointing to the rule that, save in exceptional circumstances not demonstrated here, one affiliated corporation is not liable for the debts of the other, e.g., Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999)--a principle applicable to suits under the Fair Debt Collection Practices Act. Pettit v. Retrieval Masters Creditors Bureau, Inc., No. 99-1797, 2000 WL 558945, at *1 (7th Cir. May 9, 2000); White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000); Aubert v. American General Finance, Inc., 137 F.3d 976, 979-80 (7th Cir. 1998). The flaw is that partners, unlike corporations, do not enjoy limited liability. The liability of a partnership is imputed to the partners, and so the plaintiff was entitled to sue the partners as well as the partnership. Bartlett v. Heibl, supra, 128 F.3d at 499-500; Fla. Stat. sec. 620.8305(1) (the Echevarria firm is a Florida partnership).

The judgment in favor of the defendants is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Reversed and Remanded.