Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





# MEMORANDUM OPINION

No. 04-09-00449-CV

Lucinda S. **AGUEROS** a/k/a Lucinda S. Campos,
Appellant

v.

**HUDSON & KEYSE**, LLC,
Appellee

From the County Court at Law No 5, Bexar County, Texas
Trial Court No. 303154
Honorable David J. Rodriguez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebecca Simmons, Justice

Delivered and Filed:  August 31, 2010

REVERSED AND REMANDED

This appeal arises from a debt collection action.  Appellee Hudson & Keyse, L.L.C. filed suit against Agueros to collect an outstanding debt.  In response, Agueros asserted various affirmative defenses and counter-claims, for actual and statutory damages, under both state and federal debt collection acts.  Hudson & Keyse then non-suited its action.  Thereafter, the parties went to trial on Agueros's counter-claims.  Based on Agueros's failure to prove any statutory violations or actual damages, the trial court entered a take-nothing judgment and subsequently

denied Agueros's motion for new trial. The trial court filed extensive findings of fact and conclusions of law in support of the take-nothing judgment. On appeal, Agueros complains that the evidence was legally and factually insufficient to support the trial court's findings that she suffered no damages and that Hudson & Keyse did not violate the federal fair debt collection laws. Agueros likewise contends that she proved her claims for violation of 15 U.S.C. sections 1692e and 1692f as a matter of law. Finally, Agueros argues that, even absent an award for actual damages, the trial court erred in denying statutory additional damages.

BACKGROUND

Hudson & Keyse sent Agueros five demand letters between September and December of 2004 attempting to collect an alleged outstanding debt of $8,700.55.[1] The sixth letter sent by Hudson & Keyse to Agueros in January 2005, however, demanded payment of only $4,343.66. Hudson & Keyse subsequently filed suit against Agueros in June 2005 seeking to recover a debt in the amount of $4,343.66.[2] Hudson & Keyse's admitted Agueros's Debtor History Report into evidence at trial indicating: (1) the original Wells Fargo account was opened on June 26, 2002, and became delinquent on August 21, 2003; (2) the last payment was made on November 28, 2003; and (3) the debt was charged off on March 31, 2004. The Report further shows that the balance on the account, as of September 23, 2004, was $3,900.39 and accrued interest at the rate of 17%. In addition to the Report, the affidavit of Nancy Quere, a representative of Hudson & Keyse, was attached to Hudson & Keyse's Original Petition and confirmed that the amount assigned by Wells Fargo to Hudson & Keyse was $4,343.66. At trial, Agueros testified that, in addition to receiving the demand letters, she also received harassing phone calls from Hudson &

---

[1] Wells Fargo National Bank assigned the debt to Hudson & Keyse. The debt was based on a credit card or a line of credit.

[2] In September 2004, Hudson & Keyse filed a third party debt collector bond in accordance with the provisions of Section 392.001 of the Texas Finance Code.

Keyse. Following receipt of the letters and the telephone conversations, she felt ill, was anxious, and would cry and throw-up. On cross-examination, much of Agueros's testimony contradicted her deposition testimony. Agueros admitted she had many outstanding debts and was subject to other more severe collection efforts. Likewise, Agueros also suffered from cancer, diabetes, high blood pressure, high cholesterol, high triglyceride levels, and high glucose levels, and was seeing a hematologist at the Cancer Research Center.

The trial court entered numerous findings of fact including: (1) Hudson & Keyse made no false representations regarding the amount of the alleged debt or attempt to collect any amount that was not either authorized by the agreement or permitted by law; (2) Agueros suffered no damages as a result of Hudson & Keyse's actions; and (3) the damages she suffered were a result of pre-existing conditions. The trial court also found that Agueros failed to adequately respond to discovery on attorney's fees, and that she destroyed or allowed to be destroyed evidence that she claimed supported her position. Thus, the court found "an unrelated presumption arose that in fact the evidence supported Hudson & Keyse."

### STANDARD OF REVIEW

In a bench trial, the trial court's findings of fact have the identical force and dignity as a jury's verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). However, when the record contains a complete reporter's record, as it does in this case, the findings of fact are not conclusive. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex. App.—San Antonio 1995, writ denied).

Although Agueros characterizes her appellate points as factual and legal insufficiency, we note that she had the burden of proof at trial. If an appellant attacks the legal sufficiency of an adverse finding to an issue on which she carried the burden of proof, she must demonstrate on

appeal that the evidence conclusively establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a matter of law challenge, the reviewing court will examine the record for evidence that supports the finding. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* at 241. If a party is challenging a jury finding regarding an issue upon which that party had the burden of proof, the moving party must demonstrate that "the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must first examine the record to determine if there is some evidence to support the finding; if such is the case, then we must determine, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or whether the great preponderance of the evidence supports its nonexistence. *Id.* at 241.

### THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

The trial court made the following findings pertinent to the Federal Fair Debt Collection Practices Act (FDCPA) sections 1692e and 1692f:

1. Hudson & Keyse did not make false representations regarding the character, amount or legal status of the alleged debt;

2. Hudson & Keyse did not attempt to collect any amount that was not either authorized by the agreement or permitted by law;

3. Hudson & Keyse did not misrepresent the character, extent, or amount of the debt; and

4. Hudson & Keyse did not use any false representations or deceptive means to collect the debt.

*See* 15 U.S.C. §§ 1962e, 1962f (2006). Agueros claims the evidence to support such findings is legally insufficient because the evidence is conclusive that Hudson & Keyse violated the FDCPA.

The FDCPA subjects debt collectors to civil liability for engaging in certain proscribed debt collection practices. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 130 S. Ct. 1605, 1608 (2010). Among other things, the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see Jerman*, 130 S. Ct. at 1608–09; *Heintz v. Jenkins*, 514 U.S. 291, 292–93 (1995). In order to prevail on an FDCPA claim, a plaintiff must prove: (1) the plaintiff has been the object of collection activity arising from consumer "debt"; (2) the defendant is a "debt collector" as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See* §§ 1962a, 1962e, 1962k; *see also Jerman*, 130 S. Ct. at 1629.

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5). "Debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another." § 1692a(6).

The trial court made no findings regarding the status of Hudson & Keyse as a debt collector or the status of the debt as consumer debt. We, therefore, imply the court would make findings in support of the judgment. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Hudson & Keyse argues on appeal that there is no evidence the outstanding

debt qualifies as consumer debt or that it is a debt collector. It was undisputed at trial that Hudson & Keyse is a debt collector. In view of (1) the demand letters that state, "[T]his is a communication from a debt collector"; (2) the third-party debt collector bond[3], and (3) the lawsuit filed by Hudson & Keyse to recover the outstanding debt, we summarily reject the contention that Hudson & Keyse was not engaged in "collection activity" with regards to Agueros. We hold that the evidence was conclusive that Hudson & Keyse was a debt collector under the FDCPA.

At trial, Agueros identified the debt described in the demand letters as consumer debt. The Experian Consumer Credit Report introduced into evidence by Hudson & Keyse describes the account as being "disputed by consumer (Meets requirement of the Fair Credit Reporting Act)." There was no dispute that Hudson & Keyse had reported the debt to Experian. The affidavit of Hudson & Keyse's representative describes the debt as originating when Agueros requested the issuance of a credit card or line of credit from Wells Fargo. The identity of the debt as consumer debt simply was not an issue at trial, there was no evidence offered that it was anything other than consumer debt. The only evidence before the court was that it was a consumer debt. We conclude that the court's implied findings are not against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We next turn to the alleged violation of the FDCPA.

## A. Prohibited Acts

The FDCPA is a strict liability statute, and only one violation of the FDCPA is necessary to establish civil liability. *See In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009) (stating that a false representation need not be intentional to be actionable under § 1692e (citing

---

[3] The Third-Party Debt Collector Bond states that the "Principal [Hudson & Keyse LLC] is engaged in the business of a third-party debt collector. . . ."

*Pittman v. J.J. Mac Intyre Co.*, 969 F. Supp. 609, 613 (D. Nev. 1997))).[4] As such, "the defendant's culpability is a consideration only in computing damages under the FDCPA." *Pittman*, 969 F.Supp. at 613 (citing 15 U.S.C. § 1692k(b)).

*1. 15 U.S.C. Sections 1692e and 1692f*

Section 1692e requires a debt collector to refrain from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute delineates specific conduct that violates section 1692e, including: (1) falsely representing the "character, amount, or legal status of any debt," and (2) using "any false representation or deceptive means to collect or attempt to collect any debt." §§ 1692e(2)(A) & 1692e(10). Furthermore, the FDCPA demands that debt collectors refrain from using "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

A representation is considered false if "it would mislead the unsophisticated or least sophisticated consumer." *Meroney v. Pharia, L.L.C.*, 699 F. Supp. 2d 550, 552 (N.D. Tex. 2009) (citing *Goswami v. Am. Collections Enter. Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)). The "least sophisticated consumer" standard is designed "to ensure the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices; and . . . to protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *In re Eastman*, 419 B.R. 711, 728 (Bankr. W.D. Tex. 2009) (quoting *Sparkman v. Zwicker & Assoc., P.C.*, 374 F. Supp. 2d 293, 301 (E.D.N.Y. 2005)). Importantly, an amount misstated by a debt

---

[4] *See, e.g.*, *Taylor v. Perrin Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Whitaker v. Hudson & Keyse, L.L.C.*, No. 1:05-cv-01597-JDT-WTL, 2007 WL 2265057, at *3 (S.D. Ind. Aug. 6, 2007); *Gibson v. Grupo de Ariel, L.L.C.*, No. Civ.A.4:05-CV-415-BE, 2006 WL 42369, at *1 n. 2 (N.D. Tex. Jan. 9, 2006).

collector "'need not be deliberate, reckless, or even negligent to trigger liability—it need only be false,'" to constitute a misrepresentation of the debt. *Whitaker*, 2007 WL 2265057, at *3 (quoting *Ross v. RJM Acquisitions Funding L.L.C.*, 480 F.3d 493, 495 (7th Cir. 2007)).

   *2. Application*

   Agueros contends that a violation of FDCPA was conclusively proved at trial by the following evidence: (1) Hudson & Keyse's first demand letter, dated September 23, 2004, stated Hudson & Keyse purchased Agueros's Wells Fargo account and the past due amount owed was $8,700.55; (2) Hudson & Keyse's internal records admitted into evidence at trial indicate the purchased balance was $3,900.39;[5] (3) Hudson & Keyse sent a total of five letters demanding payment of $8,700.55.[6]   Yet, Hudson & Keyse's sixth letter, dated January 26, 2005, and original petition filed June 1, 2005, alleged a past due amount of $4,343.66.   Additionally, Hudson & Keyse's legal account manager, Nancy Quere, submitted an affidavit that Agueros made charges to the Wells Fargo Account in the amount of $4,343.66 through November 30, 2004, and that account and amount was assigned to Hudson & Keyse.  Thus, according to Quere, the amount due to Hudson & Keyse as of June 1, 2005, was $4,343.66.  There is no mention in the affidavit of any additional amounts to support that $8,700.55 was ever owed or assigned. Lastly, according to the Experian Credit Report, Wells Fargo Financial Bank, the originator of the debt, reported to Experian that: (1) Agueros's account was closed and $2,998.00 was charged off; (2) Agueros's original credit limit was $3,000.00; and (3) the high balance was $3,900.00. The Credit Report likewise reflected the account debt of $3,900.00 was assigned to Hudson & Keyse.   Hudson & Keyse argues that demanding and suing on a lesser amount than what is

---

[5]   Based on Hudson & Keyse's Debtor History Report, the interest that accumulated from March 31, 2004, to September 23, 2004, was $319.73.  (H&K Ex. 10, p. 1).
[6]   The demand letters were dated: September 23, 2004; October 28, 2004; November 9, 2004; November 26, 2004; and December 6, 2004.

actually owed does not amount to a violation of any statute or regulation. Furthermore, Hudson & Keyse argues that the burden was on Agueros to establish that the amount owed was less than the $8,700.55 originally demanded. We hold the evidence is conclusive that Hudson & Keyse demanded more than Agueros owed.

A dunning letter demanding only a portion of the debt owed does not comply with the requirements of the FDCPA and constitutes a false and misleading representation in violation of § 1692e(2)(A). *Hepsen v. J.C. Christensen & Assocs., Inc.*, No. 8:07-CV-1935-T-EAJ, 2009 WL 3064865, *4 (M.D. Fla. Sept. 22, 2009) (slip op.). In an analogous case, *Hepsen*, 2009 WL 3064865, the debtor contended that by misstating the amount of the debt in the demand letter, the debt collector "falsely represented the character and legal status of the alleged debt" and the debt collector failed to show that the amount claimed to be owed was expressly authorized by contract in violation of the FDCPA. *Id.*; *see* §§ 1692e(2)(A), 1692e(10), 1692(1). The court held that a demand letter "must state the exact and correct amount of the debt" in order to comply with the FDCPA. *Hepsen*, 2009 WL 3064865, at * 5 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000)). Based on the debt collector's own records, the court concluded that the debt collector incorrectly stated the amount of the debt in its demand letter. *Id.* The debt collector maintained that the reduced amount was the debt collector's settlement amount. Although the court acknowledged it is possible for a debt collector to seek less than the total amount due, J.C. Christensen's demand letter did not indicate that the lesser amount was a proposed settlement for less than the total amount due. *Id.* Thus, the court concluded the debt collector misrepresented the amount of the debt in violation of section 1692e(2)(A). *Id.*

In the present case, Hudson & Keyse's representative admitted the debt acquired from Wells Fargo was the $4,343.66 it demanded in its last letter. The affidavit acknowledging the specific debt owed was not only attached to the petition, but was also submitted as summary judgment evidence. At trial, the affidavit was admitted into evidence. Hudson & Keyse's argument that Agueros did not establish that the $8,700.55 was not owed is disingenuous, as it judicially admitted that the debt was not the $8,700.55 previously demanded, but the $4,343.66 it swore was assigned from Wells Fargo.[7] The evidence simply does not support the debt was ever greater than $4,343.66. Hudson & Keyse's own business records, original petition filed with attached affidavit, and Agueros's credit report establish the amount due was never $8,700.55, and the only inference that can be made is the first five demand letters grossly overstated the amount of the debt due in violation of 15 U.S.C. sections 1692e & 1692f of the FDCPA. "[I]f the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Furthermore, Hudson & Keyse is not relieved of liability even though it later amended the amount owed to reflect the correct amount. *See Eads v. Wolpoff & Abramson, L.L.P.*, 538 F.Supp.2d 981, 986–87 (W.D. Tex. 2008) (holding that debt collector can be held liable for violating the FDCPA because it attempted to collect the amount of $225.00 in excess of that which it was expressly authorized to collect, even though it later amended the state court petition to indicate the correct amount due); *Goins v. JBC & Assocs.*, 352 F. Supp. 2d 262, 269 (D. Conn. 2005) (concluding debt collection letter violated the FDCPA because it falsely represented the past due amount though the false representation was later corrected). We, therefore, conclude, as a matter of law, that Hudson &

---

[7] Even assuming Hudson & Keyse was simply employing a "legal strategy," to seek less than what was owed, neither its last demand letter nor its original petition informed Agueros that the balance of $4,343.66 was presented as a settlement offer for less than the full amount of the debt.

Keyse violated sections 1692e and 1692f, and the trial court erred in concluding that no violation of the FDCPA occurred. We next turn to the trial court's finding of no damages.

DAMAGES

## A. Applicable Law

A debt collector who violates any provision of the FDCPA is subject to civil liability for damages. 15 U.S.C. § 1692k. Damages include: (1) any actual damage sustained as a result of violation of the FDCPA; (2) "additional" damages not exceeding $1,000.00; and (3) "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." §§ 1692k(a)(1), 1692k(a)(2)(A), 1692k(a)(3). In determining the amount of "additional" or statutory damages under subsection (a)(2)(A) courts must consider: (1) "the frequency and persistence of noncompliance by the debt collector"; (2) "the nature of such noncompliance"; and (3) "the extent to which such noncompliance was intentional . . . ." § 1692k(b).

## B. Analysis

*1. Actual Damages*

Actual damages can include damages for emotional distress, out-of-pocket expenses, personal humiliation, embarrassment, or mental anguish. *See Harrington v. Nat'l Enter. Sys., Inc.*, No. 4:08cv422, 2010 WL 890176, at *4 (E.D. Tex. Mar. 9, 2010). However, the debtor must prove she suffered some specific loss to recover actual damages. *Id.* at *3.

The trial court made a finding of fact that Agueros suffered no damages as a result of Hudson & Keyse's actions and any alleged damages resulted from Agueros's pre-existing conditions. Agueros testified to her reactions after receiving the demand letters and phone calls demanding payment of $8,700.55. Agueros testified that she felt sick and nervous, and

experienced headaches and started throwing up. In addition, Agueros stated that she felt someone was going to come to her door and pull her out of her house, and she could not stop shaking. Agueros testified that the harassment made her cry, and unable to sleep and do her regular things at home, like fix dinner for her family.

However there was also testimony that Agueros was in serious debt and numerous collection agencies were seeking payment from her and calling her. Likewise she suffered from cancer, high blood pressure, diabetes, and a myriad of illnesses. At trial, her testimony often contradicted her prior deposition testimony regarding her reaction to the demand letters and the extent of her distress. Because the trial court was the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony, the trial court was free to disbelieve Agueros and we may not impose our own opinions to the contrary. *City of Keller*, 168 S.W.3d at 819. Accordingly, we must assume that the trial court decided all credibility questions in favor of the verdict if reasonable human beings could do so. *Id*.

### 2. *"Additional Damages"*

The trial court concluded Agueros suffered no actual damages. In addition to the recovery of actual damages, the FDCPA provides for recovery of "additional" statutory damages as determined by the court after a consideration of: (1) the frequency and persistence of the debt collector's noncompliance, (2) the nature of the violation, and (3) the extent to which the debt collector's actions were intentional. The FDCPA sets a ceiling of $1,000.00 on "additional" damages, § 1692k(a)(2), and "vests courts with discretion to adjust such damages where a violation is based on a good-faith error." *Jerman*, 130 S. Ct. at 1621 (citing 15 U.S.C. § 1692k(b)). Notably, a recovery of actual damages is not necessary to the recovery of additional damages. The failure to adequately establish actual damages is not an automatic bar

to recovery of "additional" damages. *Prophet v. Myers*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008) (stating that to assert a claim under the FDCPA, a plaintiff need not establish actual damages). The vast majority of cases interpreting this provision of the FDCPA have reached the same conclusion.[8] We hold Agueros was not required to prove actual damages in order to recover "additional" damages under § 1692k. The trial court determined that there were no actual damages, but did not determine whether additional damages were appropriate. Because the trial court did not find a violation of the FDCPA, it did not consider the award of additional damages under the appropriate standard.

Although Rule 44.1(b) of the Texas Rules of Appellate Procedure precludes us from ordering a separate trial on damages if liability is contested, liability in this case is now uncontested because it has been established as a matter of law. *See Am. Bankers Ins. Co. of Florida v. Caruth*, 786 S.W.2d 427, 427 (Tex. App.—Dallas 1990, no writ); *see also Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 647 n.31 (Tex. App.—Austin 2000, pet. denied) (finding good cause to suspend rule and remand for damages determination).

### CONCLUSION

In light of our conclusion that Hudson & Keyse violated the FDCPA, and the trial court did not consider the award of statutory additional damages, we reverse the judgment of the trial court and remand this matter for action consistent with this opinion.

Rebecca Simmons, Justice

---

[8] *Compare, e.g.*, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated, . . . ."); *In re Eastman*, 419 B.R. at 733 ("With regard to the statutory damages, a plaintiff need not establish actual damages to recover under the FDCPA." (citing *Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 924 (E.D. Va. 2006))) *with, e.g.*, *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989) (holding that a single, trivial, and unintentional violation of the FDCPA is not enough for an award of statutory damages, "particularly since such damages are discretionary" and no actual damages were shown).