18-1260-cv
*Kolbasyuk v. Capital Mgmt. Servs., LP*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2018

(Argued: December 13, 2018          Decided: March 12, 2019)

No. 18-1260-cv

————————————————————

YURI KOLBASYUK, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

-v.-

CAPITAL MANAGEMENT SERVICES, LP,

*Defendant-Appellee.*

————————————————————

Before:      SACK, LIVINGSTON, and CHIN, *Circuit Judges.*

Plaintiff-Appellant Yuri Kolbasyuk received a debt collection letter from Defendant-Appellee Capital Management Services, LP ("CMS"). Kolbasyuk sued CMS under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, but the United States District Court for the Eastern District of New York (Cogan, *J.*) rejected his claims. We hold that a debt collection letter that informs the consumer of the total, present quantity of his or her debt satisfies 15 U.S.C. § 1692g notwithstanding its failure to inform the consumer of the debt's constituent components or the precise rates by which it might later increase. We further hold that such a letter does not violate 15 U.S.C. § 1692e for failure to inform the

1

consumer that his or her balance might increase due to interest or fees when the letter contains the "safe harbor" language previously ratified in *Avila v. Riexinger & Associates, LLC*, 817 F.3d 72 (2d Cir. 2016). Accordingly, the judgment of the district court is AFFIRMED.

FOR PLAINTIFF-APPELLANT:    LEVI HUEBNER, Levi Huebner & Associates, PC, Brooklyn, New York, *for Yuri Kolbasyuk*.

FOR DEFENDANT-APPELLEE:    KIRSTEN H. SMITH (Bryan C. Shartle, *on the brief*), Sessions, Fishman, Nathan & Israel LLC, Metairie, Louisiana, *for Capital Management Services, LP*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), regulates certain communications from debt collectors to consumers with outstanding debts. Plaintiff-Appellant Yuri Kolbasyuk sought to invoke the FDCPA's protections when he received a debt collection letter from Defendant-Appellee Capital Management Services, LP ("CMS"). The United States District Court for the Eastern District of New York (Cogan, *J.*) dismissed Kolbasyuk's claims under 15 U.S.C. §§ 1692e ("Section 1692e") and 1692g ("Section 1692g"). We hold that CMS's letter complied with both provisions and therefore AFFIRM the district court's dismissal of Kolbasyuk's claims.

# BACKGROUND

## I. Factual Background[1]

Kolbasyuk owed a debt to Barclays Bank Delaware ("Barclays"). Barclays hired CMS to collect it. In an effort to accomplish that task, CMS sent Kolbasyuk a dunning letter dated July 21, 2017. The letter stated the present amount of Kolbasyuk's debt (about six thousand dollars) as well as the identity of the original and current creditor (Barclays). The letter contained CMS's address and contact information, including a website at which Kolbasyuk could submit his payment. The letter noted that it was a "communication . . . from a debt collector." Joint App'x 22. It also contained the following language:

> As of the date of this letter, you owe $5918.69. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For more information, write the undersigned or call 1-877-335-6949.

*Id.*

---

[1] The factual background presented below is derived from the allegations in Kolbasyuk's complaint, which we must accept as true in considering CMS's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Procedural History

After receiving CMS's letter, Kolbasyuk filed a putative class action in the United States District Court for the Eastern District of New York. He alleged that the letter violated Sections 1692e and 1692g of the FDCPA. According to Kolbasyuk's complaint, the letter violated those provisions because it failed to inform him, *inter alia*, "what portion of the amount listed is principal," "what 'other charges' might apply," "if there is 'interest,'" "when such interest will be applied," and "what the interest rate is." Joint App'x 17. Kolbasyuk also claimed that the letter conveyed the mistaken impression "that the debt could be satisfied by remitting the listed amount as of the date of the letter, at any time after receipt of the letter." *Id.* at 18.

On April 14, 2018, the district court dismissed Kolbasyuk's complaint, holding that CMS's letter violated neither of the two provisions that Kolbasyuk cited. In so doing, the district court noted that the letter "stated the amount plaintiff owed as of its date" and "stated that the amount owed may increase due to interest and fees." *Kolbasyuk v. Capital Mgmt. Servs., LP*, No. 17-CV-07499 (BMC), 2018 WL 1785489, at *2 (E.D.N.Y. Apr. 14, 2018). Kolbasyuk timely appealed.

4

## DISCUSSION

The district court dismissed Kolbasyuk's complaint under Federal Rule of Civil Procedure 12(b)(6). This Court reviews such dismissals *de novo*. *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012). To avoid dismissal under Rule 12(b)(6), the plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), we assume as true all factual allegations asserted in the plaintiff's complaint. *Id.*

In the Second Circuit, "the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). While the least sophisticated consumer may lack "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996), he can nonetheless "be presumed to possess a rudimentary amount of information about the world and a

willingness to read a collection notice with some care," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). Under this standard, a collection notice may violate the FDCPA when it is sufficiently ambiguous to give rise to a reasonable, but inaccurate, interpretation. *See Clomon*, 988 F.2d at 1319.

## I. Section 1692g

Kolbasyuk argues that CMS's letter violated Section 1692g. That section provides, in pertinent part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing—
>
> (1) the amount of the debt[.]

15 U.S.C. § 1692g(a). CMS's letter stated: "As of the date of this letter, you owe $5918.69." Joint App'x 22. Nevertheless, Kolbasyuk argues that CMS's letter did not include the required "amount of the debt" because it failed to inform him, *inter alia*, "what portion of the amount listed is principal," "what 'other charges' might apply," "if there is 'interest,'" "when such interest will be applied," and "what the interest rate is." Joint App'x 17. Absent these detailed disclosures, Kolbasyuk contends, an "otherwise accurate statement" of his debt violates Section 1692g. *Id.* at 16.

6

The text of Section 1692g clearly forecloses Kolbasyuk's argument. That provision required CMS to inform Kolbasyuk of the "amount of the debt" in question. 15 U.S.C. § 1692g(a). The word "amount" signifies a total, present quantity. *See Amount*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) (defining "amount" as "the sum total to which anything mounts up or reaches . . . in quantity"). The word "debt," as defined in the FDCPA, signifies an obligation to pay money. *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction"). The "amount of the debt," then, signifies the total, present quantity of money that the consumer is obligated to pay. And that is exactly the figure that CMS provided: the total, present quantity of money that Kolbasyuk was obligated to pay Barclays as of the date of CMS's letter.[2] Nothing in Section 1692g required CMS to inform

---

[2] On appeal, Kolbasyuk contests for the first time in this litigation not only the *sufficiency* of the figure that CMS provided, but also its *accuracy*. It is "a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Askins v. Doe No. 1*, 727 F.3d 248, 252 (2d Cir. 2013) (internal quotation marks omitted). Kolbasyuk seeks to avoid waiver by claiming that his initial complaint adequately alleged that CMS misstated the total quantity he owes. But it did not. Nothing in Kolbasyuk's complaint contested the accuracy of CMS's $5918.69 figure. Assertions like "[t]he Letter failed to inform Plaintiff whether the amount listed already includes 'interest,'" Joint App'x at 17, are not the same as an assertion that CMS's statement of Kolbasyuk's debt was *inaccurate*. Kolbasyuk has therefore failed to plausibly plead a violation of Section 1692g on the ground that CMS inaccurately stated the total amount of his debt. *See Iqbal*, 556 U.S. at 678.

Kolbasyuk of the constituent components of that debt or the precise rates by which it might later increase.[3]

Rather than relying on the text of Section 1692g, Kolbasyuk places great weight on our recent opinion in *Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017). But *Carlin* does not control this case. The debt collection letter at issue in *Carlin* included a "Payoff Statement" that allowed Carlin to retire his debt by paying the "Total Amount Due" stated in the letter through some future date. *Id.* at 211. That "Total Amount Due," however, was merely an estimate. Davidson Fink's letter noted that "the Total Amount Due may include estimated fees, costs, additional payments, and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued," and that Carlin would receive a refund in the amount of any overpayment. *Id.* The letter violated Section 1692g because Davidson Fink had only provided Carlin with an estimated, future amount that Carlin *might* owe,

---

[3] Nor are we the first court to so conclude. *See, e.g.*, *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) (stating that the "amount of the debt" means the "exact dollar amount owed" as of the date of the letter); *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953, 963 (E.D. Mich. 2015) ("[T]here is no language in the FDCPA that requires a debt collector to provide a complete breakdown of the debt owed."); *Meier v. Law Offices of Weltman, Weinberg, & Reis Co., L.P.A.*, 2011 WL 2039113, at *7 (W.D. Pa. May 5, 2011) (finding "no merit to . . . [the] argument that Defendant violated the FDCPA by failing to itemize the amounts due and how they increased over time").

rather than the total, present amount that Carlin *did* owe. *Carlin* thus presented an altogether different question than CMS's letter to Kolbasyuk, which clearly states the total, present quantity of Kolbasyuk's debt as of the letter's date.

Kolbasyuk repeatedly quotes our statement in *Carlin* that a debt collection letter "is incomplete where, as here, it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase." *Id.* at 216. For the reasons stated above, however, Kolbasyuk has taken that language out of context. *Carlin* establishes that an estimated, forward-looking "Payoff Statement" may need to inform the consumer of "what she will need to pay to resolve the debt at any given moment in the future" or provide "an explanation of any fees and interest that will cause the balance to increase." *Id.* But where, as here, the debt collector has *already* informed the consumer of the "minimum amount she owes at the time of the notice," *id.*, *Carlin* simply lacks relevance.[4] We therefore create no inconsistency with our precedent in holding

_____

[4] Indeed, applying *Carlin*'s language broadly to all debt collection letters would likely prove untenable as a practical matter. As the Seventh Circuit has recognized, it might well "be impossible" for a debt collector "to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement

that a debt collection letter that informs the consumer of the total, present quantity of his or her debt satisfies Section 1692g, notwithstanding its failure to inform the consumer of the debt's constituent components or the precise rates by which it might later increase.

## II. Section 1692e

Kolbasyuk also claims that CMS's letter violated Section 1692e. That section provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* Section 1692e provides a non-exhaustive list of sixteen potential violations of its terms, but Kolbasyuk invokes none of them here. Instead, he contends that CMS violated Section 1692e because "[t]he least sophisticated consumer could reasonably believe that the debt could be satisfied by remitting the listed amount as of the date of the letter, at any time after receipt of the letter." Joint App'x 18. With that argument, Kolbasyuk apparently seeks to capitalize on *Avila v. Riexinger & Associates, LLC*, 817 F.3d 72 (2d Cir. 2016), in which we held that a debt collector's failure to disclose that a consumer's balance might increase due to interest and fees

---

was variable." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (Posner, *J.*).

violated Section 1692e, *id.* at 76. We stated in *Avila* that "[a] reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice." *Id.*

But Kolbasyuk overlooks a major difference between his case and Avila's. Here, CMS *did* disclose—quite explicitly—that Kolbasyuk's balance might increase. Specifically, CMS's letter stated the following:

> As of the date of this letter, you owe $5918.69. Because of interest, late charges, and other charges that may vary from day to day, *the amount due on the day you pay may be greater*. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For more information, write the undersigned or call 1-877-335-6949.

Joint App'x 22 (emphasis added). CMS's unambiguous disclosure of the potential that Kolbasyuk's debt might increase vitiates Kolbasyuk's attempted analogy to *Avila*. Not even the least sophisticated consumer could conclude that his debt "could be satisfied by remitting the listed amount . . . at any time after receipt of the letter," Joint App'x 18, in the face of an explicit warning to the contrary.

Moreover, the above-quoted language from CMS's letter (excepting the numerical substitutions) identically tracks the "safe harbor" language adopted by

11

the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000). In *Avila*, we imported the *Miller* "safe harbor" language into Second Circuit law, holding that a debt collector who uses it "will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees." *Avila*, 817 F.3d at 77; *see also id.* ("Using the language set forth in *Miller* will qualify for safe-harbor treatment . . . ."). To be sure, this "safe harbor" language might not immunize debt collectors from *all* liability for "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," 15 U.S.C. § 1692e. But we nonetheless reaffirm today what we said previously in *Avila*: use of the *Miller* "safe harbor" language immunizes a debt collector from a Section 1692e claim predicated upon an alleged "fail[ure] to disclose that the consumer's balance may increase due to interest and fees." *Avila*, 817 F.3d at 77.[5]

---

[5] Kolbasyuk argues, again for the first time on appeal, that the opinions in *Miller* and *Avila* exceed the boundaries of Article III of the Constitution by reaching issues not presented by the case or controversy before the court in each case. Even if this argument had any merit, we deem it waived due to Kolbasyuk's clear failure to raise it below. *See Askins*, 727 F.3d at 252. Moreover, even if Kolbasyuk were correct that *Avila* does not bind us, *this* case or controversy *does* present the relevant "safe harbor" language for our consideration because CMS used that language verbatim in its notice. And under the circumstances of *this* case, we agree with the reasoning in *Miller* that "[n]o reasonable person could conclude that the statement" in CMS's letter "does not inform the debtor" that his balance might continue to increase. *Miller*, 214 F.3d at 876.

Finally, to the extent that Kolbasyuk attempts to state a claim under Section 1692e based on CMS's failure to provide him with a precise breakdown of his debt or to inform him of the precise interest he might incur going forward, we reject that claim too. CMS has provided Kolbasyuk with the total, present quantity of his debt and informed him that this amount might increase due to additional fees and interest. A failure to provide the additional detailed disclosures that Kolbasyuk seeks does not transform CMS's otherwise-straightforward letter into a "false, deceptive, or misleading" one.

Kolbasyuk presents no other theory under which CMS might have violated Section 1692e. Nor can we imagine one. Absent additional facts not present on this record, nothing about CMS's letter could be fairly characterized as "false, deceptive, or misleading." Accordingly, the district court did not err in concluding that Kolbasyuk's complaint fails to state a claim that CMS "use[d] any false, deceptive, or misleading representation or means in connection with the collection" of the debt at issue here. 15 U.S.C. § 1692e.

**CONCLUSION**

We have considered Kolbasyuk's remaining arguments and conclude that they are waived or without merit.   For the foregoing reasons, we **AFFIRM** the district court's judgment.