*Hayles v. Aspen Properties Group, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of July, two thousand nineteen.

Present:
>            DEBRA ANN LIVINGSTON,
>            SUSAN L. CARNEY,
>                 *Circuit Judges*,
>            RICHARD M. BERMAN,
>                 *District Judge*.\*

---

GREGORY HAYLES,

>            *Plaintiff-Appellant*,

>       v.                                                        18-2683

ASPEN PROPERTIES GROUP, LLC; and WALDMAN,
SAGGINARO & ASSOCIATES, PLLC,

>            *Defendants-Appellees*.

---

For Plaintiff-Appellant:          TIFFANY N. HARDY, Edelman, Combs, Latturner &
                                  Goodwin, LLC, Chicago, IL.

For Defendants-Appellees:         KELLY E. KALAHAR, Waldman, Kalahar & Associates,
                                  PLLC, New York, NY.

---

\* Judge Berman, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Keenan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED AND REMANDED IN PART**.

In this Fair Debt Collection Practices Act ("FDCPA") case, Plaintiff-Appellant Gregory Hayles ("Hayles") asserts claims under (1) section 1692g against Defendants-Appellees Aspen Properties Group, LLC ("Aspen") and Waldman, Sagginaro & Associates, PLLC ("Waldman"); and (2) sections 1692e and 1692f against Waldman. The United States District Court for the Southern District of New York (Keenan, *J.*) granted Defendants-Appellees' motion to dismiss Hayles's original Complaint under Fed. R. Civ. P. 12(b)(6) in an August 21, 2017 opinion and order. The court subsequently denied Hayles's motion for leave to file a Proposed Amended Complaint ("PAC") and dismissed his claims with prejudice in an August 13, 2018 opinion and order and a November 26, 2018 judgment. Hayles appeals from those decisions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### I. Standard of Review

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010). When deciding such a motion, courts may consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To survive a motion to dismiss under

Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While we assume all well-pleaded facts to be true, this tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When a district court has denied leave to amend based on futility, this Court reviews *de novo* the underlying legal question whether the proposed amended complaint states a claim. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014).

## II. The Relevant Communications

Several communications from Waldman and Aspen to Hayles are relevant to this appeal. First, Waldman sent Hayles a letter dated November 23, 2015 ("November 2015 Letter"). That letter stated that Hayles was in default on his mortgage because he had "failed to make the payment due for August 1, 2011 and all subsequent payments thereafter." A-319. It further stated that Hayles must pay $54,565.92 to "cure the default and reinstate [his] loan." A-319. According to the letter, Hayles had $800 in "Accrued Late Charges," and if he did not pay the specified sum by December 28, 2015, the loan could be accelerated. Hayles alleged that the November 2015 Letter was the first communication he received from Waldman.

Hayles received another letter from Waldman dated June 13, 2016 ("June 13 Letter"). This second letter stated that Waldman had been retained by Aspen G to initiate a foreclosure suit

against Hayles and to collect on his loan debt. The June 13 Letter further stated that Hayles was indebted "for the unpaid principal amount of $110,590.30, in addition to interest, advances, including, but not limited to reasonable attorney's fees and costs." A-338. It also gave Hayles notice that he had thirty days to dispute the debt under the FDCPA.

Third, Hayles received a letter from Aspen on June 22, 2016 ("June 22 Letter"). This letter was titled "2nd Mortgage Modification Offer," and informed Hayles that his loan was in default and had been referred to an attorney (Waldman) for foreclosure. A-341. The letter stated that the "total amount due" was $72,830.96, "including all past due fees and costs as of July 1, 2016." A-341. It also offered Hayles "an opportunity to enter into a Loan Modification with a reduced Good Faith Payment of $500," referring to an enclosed "Loan Modification Worksheet." A-341. According to the letter, the "favorable" terms it offered would be null and void after July 1, 2016. A-342. In addition to offering modified terms at which Hayles could reinstate his loan, the letter included "a Discounted Payoff (Settlement) offer of $80,000." A-342. At the end of the letter, a sentence provided that "[t]his communication is from a Debt Collector and any information will be used for that purpose." A-343. Hayles alleged that the June 22 Letter was the first communication he received from Aspen.

Lastly, on August 1, 2016, Waldman sent Hayles a third letter ("August 1 Letter"). A-367. This letter was titled "Payoff Statement as of 9-29-2016." A-345. It stated that Hayles owed Aspen G $181,986.36.[1]

---

[1] That amount consisted of:

- Unpaid principal balance: $110,590.30
- Interest owed from 7/1/11 to 9/29/16: $62,474.78
- Late fees: $1,324.32
- Unpaid loan charges: $287.96
- BPO: $100.00
- Legal fees: $7,209.00

4

## III. FDCPA Claims

In the Second Circuit, "the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). While the least sophisticated consumer may lack "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996), he can nonetheless "be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). Under this standard, a collection notice may violate the FDCPA when it is sufficiently ambiguous to give rise to a reasonable, but inaccurate, interpretation. *See id.*

### A. Section 1692g Claims

Hayles argues that Waldman and Aspen, in their initial communications to him, violated § 1692g. That section provides, in relevant part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing—
>
> > (1) the amount of the debt[.]

15 U.S.C. § 1692g(a). To assess a § 1692g claim, we must make three determinations: "(1) whether any of the communications between the parties were 'initial communications' within the meaning of § 1692g, (2) whether any of the communications between the parties were 'in connection with the collection of any debt,' and (3) whether [the debt collector] provided the amount of the debt within five days of such a communication." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017). We need not address the first two questions here, because we conclude that Hayles's

5

has failed to state a claim that either Waldman or Aspen misstated the "amount of the debt" in what he alleges were their initial communications.

As to Hayles's § 1692g claim against Waldman, the Complaint alleges that the amount of the debt stated in the November 2015 letter is inaccurate. However, Hayles's only support for this claim is that subsequent letters listed varying debt amounts that he asserts are inconsistent with the November 2015 Letter. In particular, the Complaint compares the November 2015 Letter to the August 1 Letter, notes what Hayles says are inconsistencies between the letters, and claims that "[i]t necessarily follows that either the amount of the late charges cited in the [November 2015 Letter] is wrong, or the amount owed stated in [August 1 Letter] is wrong, or both. The amount of the debt is also wrong." A-6. But there is a fundamental difference between the two letters that Hayles ignores: unlike the August 1 Letter, the November 2015 Letter was sent before the loan was subject to acceleration on or after December 28, 2015. Upon acceleration, the entire unpaid principal balance became due, which accounts for the difference in the amount of debt stated in each letter. As for the late charges, the November 2015 Letter stated an amount of $800. Under the allegations in the Complaint and attached exhibits, Hayles's debt agreement provided for $16 late charges for delayed monthly payments, and Hayles missed fifty months of payments, beginning in August 2011. Fifty times $16 is $800. Hayles has failed to plausibly allege that the late charges amount contained in the November 2015 Letter is inaccurate.

In the PAC, Hayles modified his § 1692g claim against Waldman, alleging that the November 2015 Letter "does not disclose the full amount of the debt that Waldman was attempting to collect, . . . but only part of the debt." A-267. He argues on appeal that Waldman's letter, which listed the "total to reinstate," violated § 1692g because Waldman had been retained to collect the entire loan, not just part of the debt, and so the letter should have listed the "full" amount of the

debt, including the entire unpaid principal. Appellant Br. 21–24. As support for the proposition that the "amount of the debt" must be the full amount of the debt that Waldman had been retained to collect, Hayles cites to three cases. Each of those cases determined that a debt collector issuing a payoff statement misstates the "amount of the debt" if he or she fails to include relevant interest and fees, because such a statement would mislead the consumer into thinking that he or she could pay the amount listed on the statement and actually "pay off" the debt. *See Carlin*, 852 F.3d at 215–16; *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76–77 (2d Cir. 2016); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

The cases on which Hayles relies are inapposite. In each of these cases, there was a failure to include interest and fees in the amount required to be paid, even though such monies were presently due. Here, in contrast, the November 2015 Letter clearly states that $54,565.92 is the amount to reinstate or "cure" a default. A-319. While the FDCPA is designed to protect consumers, even the least sophisticated consumer is presumed to have "a willingness to read a collection notice with some care." *Clomon*, 988 F.2d at 1319. In light of the repeated references to "curing the default" or reinstating the loan contained therein, the least sophisticated consumer, reading the November 2015 Letter with some care, would not have thought that $54,565.92 would pay off the loan in full. And Hayles does not allege that $54,565.92 would not have brought his loan current when the November 2015 Letter was mailed. As a result, Hayles has failed to state a claim against Waldman under § 1692g in either the Complaint or the PAC.

Hayles has failed to state a § 1692g claim against Aspen for similar reasons. He has provided no factual support for the claim that the June 22 Letter described an inaccurate amount of debt, aside from the fact that the dollar amount listed in the June 22 Letter is different from the dollar amount listed in the other letters. Specifically, the PAC alleges that "based on the contents

7

of [the August 1 Letter], . . . the $72,830.96 stated in [the June 22 Letter] as the total amount due is wrong." A-265. The PAC then compares the $72,830.96, listed in the June 22 Letter as "the Total Amount Due, including all past due fees and costs as of July 1, 2016," to the $110,509.32 listed in the August 1 Letter as the "unpaid principal balance," and states that "the loan did not increase by over $37,000 between" those two dates. A-266. But these two numbers are quite clearly different amounts for different purposes, as stated in the letters themselves—one described the "total amount due" as a consequence of "fail[ing] to make a payment due for August 1, 2011, and all subsequent payments thereafter," A-341, while the other described the "unpaid principal balance" on the loan, A-345. Hayles has failed to plausibly allege that the least sophisticated consumer, reading the June 22 Letter with some care, would have been misled by the $72,830.96 stated therein.

### B. Section 1692e and 1692f Claims

Hayles next argues that the Complaint and the PAC state a claim that Waldman violated §§ 1692e and 1692f of the FDCPA. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." The district court dismissed these claims because "Hayles advance[d] no independent allegations or arguments in support of his claims under §§ 1692e or 1692f," and instead "merely recite[d] the language of the statutory sections and provide[d] no specific factual allegations supporting" the claims. A-378–79. The district court thus held that the Complaint failed to state a claim under the standard set forth in *Iqbal*. The PAC was rejected for the same reason; indeed, the district court noted that there was no difference between the Complaint and the PAC as to these claims aside from the addition of conclusory language that the August 1 Letter "does

8

not accurately state the amount of the debt or the amount of late charges," and "adds late charges which are not authorized by the contract and are contrary to law." A-390. The court determined that this additional language did not suffice to state a claim.

We disagree with the district court and determine that Hayles has alleged sufficient facts to survive a 12(b)(6) motion on his §§ 1692e and 1692f claims. Hayles alleges that the "late fees" amount of $1,324.32 in the August 1 letter is inaccurate, because that amount is more than the $960 in "late charges" authorized by the mortgage note (attached to the Complaint as an exhibit, and thus appropriate for us to use in evaluating the 12(b)(6) motion).[2] The note does not specifically authorize any other late fees. As a result, it is plausible that "late fees" and "late charges" mean the same thing; if so, the $1,324.32 figure would be incorrect and constitute a "false representation" in a debt-collection effort in violation of § 1692e. The August 1 letter containing the incorrect figure would also constitute an attempt to collect a debt amount not "expressly authorized by the agreement creating the debt" in violation of § 1692f. While the two terms may, with the benefit of discovery, turn out to mean different things, we conclude that the district court erred in dismissing the §§ 1692e and 1692f claims at this early stage.

\*      \*      \*

For these reasons, we **AFFIRM** the judgment of the district court **IN PART** and **VACATE AND REMAND IN PART**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] The mortgage note provides for "late charges" of $16 when a monthly payment "is not received within 10 days after it is due." A-276. At most, 60 months have passed between the month Hayles defaulted, November 2011, and September 2016. Sixty times 16 is $960.

9